Opinion
PACHT, Acting P. J.
The People’s chief witness (a plainclothes vice officer) testified that defendant, in a remote area of Griffith Park without *Supp. 3 provocation, reached out toward the vice officer, and touched the officer’s clothing which covered the officer’s genital area and that such touching was “offensive.” Defendant was arrested for violating Penal Code section 647a, was later charged with batteiy (Pen. Code, § 242 (count I)), and later still charged with count II—assault (Pen. Code, § 240).
After a jury trial, defendant was acquitted of the batteiy charge and convicted of the assault charge. Defendant urges on appeal that the People had the burden of proving lack of consent to the touching (or attempted touching). In that regard, we observe that assault is a general intent crime and the trial court so instructed the jury.[1] It is not an element of the offense that the “victim” did not consent and the People need not prove such lack of consent. The burden of the affirmative defense of a bona fide and reasonable belief by defendant that the “victim” impliedly consented and thereby would not be offended by the touching is on the defendant and the degree of proof is to raise a reasonable doubt. (People v. Hernandez (1964) 61 Cal.2d 529 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092] [statutory rape charge —reasonable belief that the girl was over 18 years of age] and People v. Mayberry (1975) 15 Cal.3d 143 [125 Cal.Rptr. 745, 542 P.2d 1337] [kidnaping and rape—reasonable belief re consent]).)
In Mayberry, the court, in discussing the burden of proof, states at page 157: “The People’s final argument on the point is that the instructions are *Supp. 4 erroneous on the theory that the burden resting on the defendant to prove mistake of fact as to consent is not satisfied by merely raising a reasonable doubt as to that issue. The People err in this regard. In People v. Vogel, supra, 46 Cal.2d 798, 801-803, we concluded that the burden was on the defendant to prove as a defense to a bigamy charge that he had a bona fide and reasonable belief that facts existed which left him free to remarryl Similarly here the burden was on Franklin to prove that he had a bona fide and reasonable belief that the prosecutrix consented to the movement and to sexual intercourse. As to that issue, he was only required to raise a reasonable doubt as to whether he had such a belief.” (Italics added.)
In the case at bench the defense requested and the court gave the following jury instruction: “If, after considering all of the evidence, you find that the defendant touched the crotch area of officer Chamber’s clothing, but if you have a reasonable doubt as to whether the, defendant had reason to believe and did believe as a reasonable person that the touching would not be objectionable to officer Chambers, then you should find the defendant not guilty.”
Whether or not defendant’s contention re the law regarding proof of consent is correct or incorrect, becomes immaterial to the decision of this case because of events occurring in the trial court. From the engrossed settled statement on appeal it appears that the following occurred:
“Prior to closing argument defense counsel, submitted the following instruction which was approved by the Court: ‘Before the defendant may be convicted of the crime of battery, the prosecution must prove the following elements of the crime, beyond a reasonable doubt: 1) That the defendant touched Officer Chambers, and 2) That any touching was without Chambers’ consent, either express or implied, and 3) That the touching was olfensive, under existing circumstances, to Officer Chambers.’
“During closing argument, defense counsel outlined these three elements of the crime on a blackboard as he was explaining the law and the facts to the jury.
“During defense closing argument, while defense counsel was referring, to these three elements on the blackboard, the trial judge called counsel to the bench and requested that defense counsel not refer to lack of consent as an element of the crime of battery.
*Supp. 5 “Defense counsel then continued with his argument explaining the issue of consent in different terms. The Court, at the request of the prosecutor, interrupted the defense argument, to explain to the jury that lack of consent was not an element of the crime of battery that the prosecution would have to prove.
“As a result of these two admonitions by the Court, defense counsel erased the lack of consent element from the blackboard and did not refer to lack of consent as an element of the crime during the remainder of his closing argument.”
The action of the trial court, vis-a-vis, defense counsel’s argument must be viewed in the context of Penal Code section 1093.5 which states in part: “In any criminal case which is being tried before the court with a jury, all requests for instructions on points of law must be made to the court and all proposed instructions must be delivered to the court before commencement of argument. Before the commencement of the argument, the court, on request of counsel, must: (1) decide whether to give, refuse, or modify the proposed instructions; (2) decide which instructions shall be given in addition to those proposed, if any; and (3) advise counsel of all instructions to be given. . . .” Clearly, the trial court had agreed to instruct as defense counsel had requested that the prosecution was required to prove that the alleged touching was without the consent of the complaining witness.
As noted hereinabove, the trial judge during defense counsel’s argument, changed her mind with respect to the law and interrupted defense counsel’s final argument to the jury.
In order to appreciate the true flavor of the courtroom circumstances and the potential impact of those circumstances upon the trial jury, we set forth from the reporter’s transcript significant portions of the argument of defense counsel and certain comments of the court. Defense counsel argues:
“So I would like to outline really what the elements of the crime of battery—this type of a battery—is.
“Number one, some type of physical contact or touching. If you don’t have an actual touching or physical contact, if it never got to that point, if my client was reaching over and the officer grabbed his hand in anticipation, this crime is not satisfied. If you are not satisfied beyond a reasonable' doubt, to a moral certainty, that actual physical contact *Supp. 6 occurred—the physical contact that the officer says—the only testimony we have about real physical contact is that the officer says that he was groped. That’s what the officer says.
“If you have a reasonable doubt as to whether the officer was in fact groped, no battery.
“Second, that no consent, and this means no consent either expressed or implied. Obviously, you won’t even get to this point if you have a reasonable doubt as to whether in fact there was a grope. But this is an essential element of the case that the prosecution must prove beyond a reasonable doubt, that any touching was without the officer’s consent, express or implied. If you have reasonable doubt as to whether there was implied consent—did the officer give some type of cues. How would we get into this implied consent? What evidence is there on this point; who was following whom, who was making eyes at whom, was the officer following my client, was he cruising, so to speak, or not. If he was giving off cues that he wanted something to happen, that would—that might very well be enough. You will have to decide whether—what evidence there might be to show implied consent.
“And on this point, what did the officer say that he went to the park for? He went to the park to look for lewd conduct. Then he defined lewd conduct, what was lewd conduct: masturbation, mutual masturbation, oral copulation, sodomy or a grope.
“Well, he didn’t find my client exposed, exposing his genitals, he didn’t find him masturbating, he didn’t find him with any other person, so if there was going to be any arrest at all, the only thing that he would be looking for in lewd conduct here would be a grope, because there wasn’t anything else to look for. And it seems—well, the third element is that the contact with the touching was in fact offensive under the existing circumstances to Officer Chambers.
“Can a person who is looking to be offended in fact be offended? What is the definition of ‘offensiveness’? It’s a plain English word, but isn’t there an inconsistency if the person is looking for something and they find it, that they could then claim to be offended? So it’s, was the officer offended under the circumstances? This is really what the battery is all about.
“The Court: Excuse me, Counsel. Let me see counsel at the bench, please, with the reporter.
“(The following proceedings were held at bench:)
*Supp. 7 “The Court: I think that this idea of no consent as an element the prosecution must prove is somewhat misleading. Under the facts of the case, I’m going to give those instructions relating to consent, but it seems to me the reasonable belief that the officer consented to the touching goes not to an element the prosecution must prove as far as the elements of the battery, but to the issue of intent. It tends to negate criminal intent. Not specific intent, but criminal intent.
“So you might try to straighten that out.
“Mr. Coleman: I think when I get into the other part it will make it clear.
“Mr. Rogier: May the Court ask counsel to make that point clear, that the People do not have to prove consent?
“The Court: Yes. I think you can put it in terms of, in the Hernandez case, consent is not something that the People have to prove.
“Mr. Coleman: This type of case, where the issues are in contest, like we have here.
“The Court: Yes, but I think you should clarify that the issue of consent goes to the defendant’s intent, lack of criminal intent.”
We are persuaded that the trial judge, by changing her mind in the presence of the jury and in effect requiring defense counsel to change the entire thrust of his argument (without any time to ponder it further or reflect upon the court’s ruling) had the effect of destroying the credibility of the defense attorney in the eyes of the jury. Such required shifting of gears rendered defense counsel ineffective.
While the trial judge was properly motivated in attempting to correct what she believed, perhaps correctly, had been a mistake in her announced intentions regarding instructions, nonetheless, the changing of her intended instructions and the necessaiy drastic modification of defense counsel’s legal argument effectively departed from the plain meaning of Penal Code section 1093.5 and deprived the defendant of a fair trial. For this reason, the judgment is reversed.
Bigelow, J., and Ibáñez, J., concurred.

People v. Parks (1971) 4 Cal.3d 955, 959 [95 Cal.Rptr. 193, 485 P.2d 257], “Jury Instructions “Defendant contends that the ^trial court erred in refusing to instruct the jury that a necessary element of assault with a deadly weapon is the specific intent to injure. Recently we held that only a general criminal intent, namely, the intent to attempt to commit a battery, must be demonstrated to establish assault with a deadly weapon. {People v. Rocha, supra, 3 Cal.3d 893, 899 [92 Cal.Rptr. 172, 479 P.2d 372].) The instruction given by the trial court which is set forth in the margin clearly informed the jury of the elements of the offense.1 There was no error in refusing defendant’s request instruction.” (Italics added.) “xThe instruction provides: “ ‘An assault with a deadly weapon is an unlawful attempt, coupled with a present ability, to commit a violent injury upon the person of another with a deadly weapon. “ ‘Any object, instrument or weapon, when used in a manner capable of producing and likely to produce death or great bodily injury, is then a deadly weapon. “ ‘To constitute an assault with a deadly weapon, actual injury need not be caused. The characteristic and necessary elements of the offense are the unlawful attempt, with criminal intent, to commit a violent injury upon the person of another, the use of a deadly weapon in that attempt, and the then present ability to accomplish the injury. If an injury is inflicted, that fact may be considered by the jury, in connection with all the evidence, in determining the means used, the manner in which the injury was inflicted, and the type of offense committed.’ (CALJIC (2d rev. ed. 1958) (No. 604).)”