[No. D023005. Fourth Dist., Div. One. Sept. 15, 1995.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
MARTIN PEREZ, Real Party in Interest.

**COUNSEL**

Paul J. Pfingst, District Attorney, Thomas F. McArdle and Paul M. Morley, Deputy District Attorneys, for Petitioner.

California District Attorneys Association and L. Douglas Pipes as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Loren I. Mandel and Steven J. Carroll, Alternate Public Defenders, and Jacqueline C. Crowle, Deputy Alternate Public Defender, for Real Party in Interest.

California Public Defender's Association and Ron Boyer as Amici Curiae on behalf of Real Party in Interest.

## OPINION

HUFFMAN, J.—The narrow issue presented in this mandamus proceeding is whether a trial court's long-established statutory authority to declare an alternative felony, or "wobbler," a misdemeanor under Penal Code[1] section 17, subdivision (b) was abrogated by the recently enacted "three strikes" law.[2] We conclude it was not and accordingly deny the People's writ petition.[3]

### FACTUAL AND PROCEDURAL BACKGROUND

On July 20, 1994, about 9 a.m., San Diego police officers on routine patrol noticed a group of men congregated in front of Perez's residence, which is located in an area "known for narcotics activity." When questioned, Perez denied selling or being involved with drugs, but consented to a search of his residence. Although no drugs were found in his house, the officers

---

[1] All statutory references are to the Penal Code unless otherwise specified.

[2] A three strikes law was enacted as emergency legislation on March 7, 1994, and is set forth in section 667, subdivisions (b) through (i). (Stats. 1994, ch. 12.) Proposition 184 approved by the California voters on November 9, 1994, added section 1170.12 to the Penal Code, which contains almost identical provisions to those found in section 667, subdivisions (b) through (i). Because Perez was charged with a crime after the enactment of section 667, subdivisions (b) through (i) but before the passage of Proposition 184, our discussion of the three strikes law necessarily refers to section 667, subdivisions (b) through (i). Our review of the two statutory schemes, however, has revealed no significant differences between them regarding the provisions at issue here.

[3] After the court declared real party in interest Martin Perez's wobbler offense a misdemeanor under section 17, subdivision (b)(3), the People filed this writ petition and a notice of appeal. Because the matter presented legal issues of statewide importance in need of immediate resolution, we concluded appeal was an inadequate remedy, issued an order to show cause why the relief requested in the writ petition should not be granted and heard oral argument. (See *Anderson* v. *Superior Court* (1989) 213 Cal.App.3d 1321, 1328 [262 Cal.Rptr. 405].) On April 25, 1995, we initially denied the People's petition. On May 22, 1995, we granted the People's petition for rehearing and permitted the parties to file supplemental briefing on the matters covered in the petition. We subsequently granted the applications of the California Public Defender's Association and the California District Attorneys Association (Amicus DA) to appear as amici curiae and to file briefs in support of Perez and the People, respectively, and gave each party time to respond. Our decision encompasses all the briefings and oral reargument of the matter.

found a stolen truck and car parts in his backyard, and doors from another stolen truck in his living room. Perez claimed he did not know any vehicle or parts were stolen, explaining he rented his backyard for storage to a man who ran an automotive garage. Perez said his wife had allowed the man to put the doors in their living room because he expressed concern they would get stolen or scratched in the crowded backyard.

Perez was charged by information with receiving stolen property (§ 496, subd. (a)). An amended information was later filed adding a "strike" allegation (§ 667, subds. (b)-(i)), that Perez had a prior serious felony conviction for shooting at an occupied structure (§ 246). While the testimony in the trial took less than two and one-half hours, the jury deliberated for almost two full days and requested two readbacks of witness testimony before returning a guilty verdict. Perez waived a jury trial as to the prior allegation and filed a motion which, inter alia, requested the court to reduce the felony charge to a misdemeanor under section 17, subdivision (b).

At the date set for sentencing, the court found true the prior felony conviction allegation, specifically finding Perez had personally fired the gun during that earlier crime, and expressed concern about that case:

"What troubles me about this is I'm really surprised that his counsel pled him to count two rather than negligent discharge of a firearm, quite frankly, based on what I've heard about that case and the reports I've read about that case. This is a part of this case that troubles me.

"I understand that he pled pursuant to *People* v. *West* [(1970) 3 Cal.3d 595, 611 (91 Cal.Rptr. 385, 477 P.2d 409)], but when you take into consideration all the facts of [that] offense, apparently the man was intoxicated, had been drinking, and fired 32 rounds into the air, and out of those 32 one of them apparently hit a door to a residence, and that's the basis for this serious felony conviction, and that's what troubles me about this case because it elevates it to a strike for which, if I leave this crime here as a felony, he's going to serve twice the base term and 80 percent of it in state prison."[4]

The court then asked counsel to comment on the situation. After hearing arguments on the ultimate issue of whether or not to leave the current offense a felony or to reduce it, the court stated:

"[M]y problem is that I'm between a rock and a hard place in that I cannot strike, nor will I strike, a serious felony prior. The alternative, there are two

---

[4]The probation report filed for the sentencing hearing indicated Perez had only the one alleged prior conviction. Absent any strike considerations, the report recommended formal probation conditioned upon Perez serving 365 days' custody in the county jail.

of them: I can *Est[e]ybar* [*Esteybar* v. *Municipal Court* (1971) 5 Cal.3d 119 (95 Cal.Rptr. 524, 485 P.2d 1140)] . . . this crime, making it a misdemeanor. I'm reluctant to do that because I think he needs another felony. The alternative is for the district attorney to agree to the striking of it, in which case I will leave it a felony and sentence him accordingly.

"
. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . I'm not going to play games with it and try to strike the prior, I can't strike the prior. I agree with that law, and I have imposed that law.

"But my problem is I don't think this was an open and shut case. The jury took a considerable amount of time deliberating in this case, they asked for testimony to be read back . . . . So it wasn't a clear cut slam dunk receiving stolen property case. I think it was a very close case and therein lies my problem.

"
. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"I do know that based on everything I've heard that he was a hard worker, he was always fully employed, provided for his family. . . . [F]or the serious felony of [section] 246 to get 15 days credit for time served, that has to tell you something about that crime.

". . . I should tell you that I'm certainly leaning towards declaring this crime to be a misdemeanor."

The court then asked the prosecutor to consider requesting the prior be struck in the interest of justice, indicating it would likely declare the offense to be a misdemeanor if the district attorney chose not to do so. The court granted the deputy district attorney's request for a short continuance of the motion to reduce the alternative felony to a misdemeanor so he could consult with his superiors. The prosecutor then filed opposition to the motion, which reflected the position of the district attorney's office on the interpretation of section 667, subdivisions (b) through (i), arguing the court had no power to reduce the offense to a misdemeanor.[5]

At the continued hearing the court heard further argument and commented:

---

[5]The prosecutor specifically asserted at the continued hearing on the matter that "when [the statute] says mandatory prison and the defendant has been convicted both of the underlying offense and the allegation of [section 667, subdivision (b) through (i)] has been found true, that to reduce it at that point to a misdemeanor to allow local custody subverts the meaning of the section."

"I've already stated on the record . . . what my attitude about this case is. And I don't think the cases deal with [section 17, subdivision (b)(3)], and I think that's the section that I am applying. I think the cases cited by the district attorney do not stand for . . . the proposition that I cannot at this time declare this crime to be a misdemeanor.

"And therefore, under [section 17, subdivision (b)(3)], I do declare it at this time to be a misdemeanor.

"And I'm going to sentence [Perez] as follows: I'm going to commit [him] to the . . . sheriff's department for three hundred sixty-five days with . . . total credits [for] two hundred and sixty-six days.

"I'm going to also place [Perez] on probation for a period of three years on the following terms and conditions: that [he] pay a fine in the amount of two hundred fifty dollars, including penalty assessments, and restitution . . . [and a restitution fine.]"[6]

## DISCUSSION

The People's sole contention is the three strikes law supersedes any discretion or authority a trial court has under section 17, subdivision (b)[7] to reduce a current alternative felony, or wobbler, once a defendant is "convicted," or found guilty, of that crime (albeit by jury verdict, court decision or plea) and has been found to have previously suffered a conviction for a serious or violent felony conviction within the meaning of sections 667.5, subdivision (c) or 1192.7, subdivision (c).[8] Thus, given the uncontested facts

---

[6]The minutes of the sentencing hearing reflect the court granted the defense motion to reduce the charge, suspended the sentence imposed and made the local custody time a condition of three years' formal probation in addition to other conditions.

[7]Section 17, subdivision (b) provides in relevant part: "(b) When a crime is punishable, in the discretion of the court, by imprisonment in the state prison or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances: [¶] (1) After a judgment imposing a punishment other than imprisonment in the state prison. [¶] . . . [¶] (3) When the court grants probation to a defendant without imposition of sentence and at the time of granting probation, or on application of the defendant or probation officer thereafter, the court declares the offense to be a misdemeanor."

[8]In the People's supplemental letter brief and the Amicus DA's brief, it is also claimed the three strikes law nullifies any trial court sentencing discretion under section 17, subdivision (b) once a defendant is merely *charged* with any felony, regardless of its being a statutorily defined wobbler, and it is alleged the defendant has suffered a prior serious or violent felony conviction. Aside from the fact we have recently determined in another context the plain language of the three strikes law requires a defendant "be *convicted* of a felony and the prior strike allegations be *proved* before" the provisions of that statute become applicable (*McGrath v. Superior Court* (1995) 41 Cal.App.4th 519, 525 [43 Cal.Rptr.2d 32] review granted October

Perez was found guilty by jury of a wobbler[9] and the court found he had previously suffered a felony conviction within the meaning of section 1192.7, subdivision (c)(23), which designates any felony in which the defendant personally used a "dangerous or deadly weapon" as a serious felony, the People assert the three strikes law was automatically triggered mandating the court to sentence Perez to state prison for the term prescribed by that law, i.e., under section 667, subdivision (e)(1).[10] We disagree.

Preliminarily, we note two other California Courts of Appeal have recently determined the trial court's authority under section 17 has not been superseded by the three strikes law. (See *People* v. *Trausch* (1995) 36 Cal.App.4th 1239 [42 Cal.Rptr.2d 836]; *People* v. *Vessell* (1995) 36 Cal.App.4th 285 [42 Cal.Rptr.2d 241].)[11] Although we reach the same conclusion, we do so via a slightly different route.

A. *Basic Statutory Classifications of Crimes and Punishments*:

■ We start our analysis with the basic premise it is the Legislature's function to define offenses and to prescribe punishments. (*People* v. *Navarro* (1972) 7 Cal.3d 248, 258 [102 Cal.Rptr. 137, 497 P.2d 481].) Section 16 classifies "crimes and public offenses" as felonies, misdemeanors and infractions. A felony is a crime punishable with death or by imprisonment in the state prison. (§ 17, subd. (a).) Every other crime or public offense not an infraction is a misdemeanor. (*Ibid.*) If a given statute, however, does not define the nature of the crime as either a felony or a misdemeanor, but merely specifies a punishment, the test of the nature or status of the offense, which only applies to this special class of felony-misdemeanor offenses or so-called wobblers, becomes the actual punishment imposed. (§ 17, subd. (a); *People* v. *Boren* (1903) 139 Cal. 210, 213 [72 P 899]; see *People* v. *Walters* (1961) 190 Cal.App.2d 98, 101-102 [11 Cal.Rptr. 597].)

For over a century, California trial courts have had discretion under section 17, subdivision (b) to determine at the time of sentencing whether

---

26, 1995 (S048388)), this issue was not raised before the trial court or in the original petition. We therefore do not further address the matter, rather keeping the focus of our review to that framed by the petition and further expounded upon in the supplemental briefing.

Nor do we include the People's assertions concerning the magistrate's discretion under section 17, subdivision (b)(5) in our discussion as such are not relevant in this case.

[9]Perez was found guilty of receiving stolen property in violation of section 496, subdivision (a), which is by definition a wobbler under section 17, subdivision (b) because it provides for punishment at the court's discretion "by imprisonment in a state prison, or in a county jail for not more than one year."

[10]Section 667, subdivision (e)(1) requires that a defendant with a qualifying prior felony conviction "shall" be sentenced to prison for "the determinate term or minimum term for an indeterminate term" which is "twice" that otherwise provided for the current conviction.

[11]The parties have fully briefed the correctness of *Vessell* and the effect of its holding on this case. The People also addressed the holding in *Trausch* at oral argument.

such wobbler offense will be treated, i.e., punished, as a misdemeanor. (Cal. Code Amends. 1873-1874, ch. 196, § 1, p. 455.) More than 30 years ago, in response to certain problems created by the lack of authority in a wobbler case to declare the offense a misdemeanor without imposing sentence when there was a probation grant, the Legislature specifically amended section 17, subdivision (b)(3) to provide such trial court discretion "at the time of granting probation, or, on application of the defendant or probation officer thereafter."[12] (Stats. 1963, ch. 919, § 1, p. 2169; see *People* v. *Banks, supra,* 53 Cal.2d at pp. 381-383; *Meyer* v. *Superior Court* (1966) 247 Cal.App.2d 133 [55 Cal.Rptr. 350].)

█ Here, as already noted, Perez was charged with and found guilty of a wobbler offense. The trial court exercised its discretion under section 17 to declare the offense a misdemeanor and to also impose sentence to other than state prison, stay its execution and grant Perez probation conditioned upon serving time in county jail. Contrary to the People's technical reading of the oral pronouncement of sentence and regardless whether the trial court imposed judgment using its combined discretion under subdivisions (b)(1) and (b)(3) rather than solely under section 17, subdivision (b)(3) as it stated, we construe the actual "sentence," or judgment imposed, as statutorily authorized and clearly evidencing the trial court's intent to reduce Perez's charge to a misdemeanor.[13] The question thus becomes whether the trial court's exercise of discretion under section 17, subdivision (b) was somehow made "unauthorized" as a matter of law by the enactment of the three strikes legislation. To answer this question and address the People's various arguments and concerns, we must review the three strikes law in light of familiar rules of statutory construction and interpretation.

[12]Previously, when a defendant had been granted probation for a wobbler, the trial court only had discretion to either pronounce judgment and suspend its execution or not pronounce any judgment at all. Since there was consequently no sentence in the latter case to determine the nature of the crime, a general rule evolved that the wobbler offense was to be regarded as a felony for every purpose until imposition of sentence or judgment, and thereafter it was a felony only if imprisonment in state prison were ordered. (See *People* v. *Banks* (1959) 53 Cal.2d 370, 381 [1 Cal.Rptr. 669, 348 P.2d 102]; *People* v. *Williams* (1945) 27 Cal.2d 220, 229 [163 P.2d 692].)

As our Supreme Court noted in *In re Anderson* (1968) 69 Cal.2d 613, 626-627 [73 Cal.Rptr. 21, 447 P.2d 117], "[t]he fact that a crime punishable as a felony or a misdemeanor is regarded as a felony unless and until the trial court imposes a misdemeanor sentence [citations] does not show that the Legislature prefers a felony sentence to be imposed by the trial court."

[13]We find no merit to the People's assertion the clear intent and effect of the court's grant of probation and commitment to the county jail was to strike the prior conviction. Rather the record reflects the court repeatedly acknowledged it had no authority to strike the prior conviction and was exercising its discretion under section 17, subdivision (b). The People have not contended in their petition the court abused that authority; therefore any issue concerning abuse of such discretion is not before us.

## B. *Statutory Construction:*

■ The well-established statutory construction rules provide that: "The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.] In order to determine this intent, we begin by examining the language of the statute. [Citations.] But '[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' [Citations.] Thus, '[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' [Citation.] . . . [W]e do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]" (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898-899 [276 Cal.Rptr. 918, 802 P.2d 420].)

Further, in construing any particular provision of a statute, we do not insert words into it as such would "violate the cardinal rule that courts may not add provisions to a statute. [Citations.]" (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 827 [4 Cal.Rptr.2d 615, 823 P.2d 1216].) Nor are we permitted to rewrite the statute to conform to an assumed intent that does not appear from its plain language. (*Napa Valley Wine Train, Inc.* v. *Public Utilities Com.* (1990) 50 Cal.3d 370, 381 [267 Cal.Rptr. 569, 787 P.2d 976].) We assume the Legislature in enacting a new law "is . . . aware of statutes and judicial decisions already in effect and [has] enacted the new statute in light thereof." (*People* v. *Hernandez* (1988) 46 Cal.3d 194, 201 [249 Cal.Rptr. 850, 757 P.2d 1013].) Particular or specific provisions will generally take precedence over conflicting general provisions. (Code Civ. Proc., § 1859; *Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 420 [128 Cal.Rptr. 183, 546 P.2d 687].) If, however, an ambiguity exists in a penal statute, the construction more favorable to the defendant will generally be adopted. (*People* v. *Davis* (1981) 29 Cal.3d 814, 828 [176 Cal.Rptr. 521, 633 P.2d 186].)

With these rules in mind, we briefly review the specific provisions of the three strikes law relevant to our determination before turning to the People's arguments.

## C. *The Three Strikes Law:*

■ As recognized by all cases interpreting the three strikes legislation thus far, the clearly stated intent of the Legislature in enacting the law is to ensure "longer prison sentences and greater punishment" for serious recidivists, i.e., those felony defendants who have previously been convicted of

serious and/or violent crimes. (§ 667, subd. (b); e.g., see *People* v. *Ramirez* (1995) 33 Cal.App.4th 559, 564, 567 [39 Cal.Rptr.2d 374].) Equally accepted is the fact the new law which amended section 667 "add[ed] a separate sentencing scheme . . . ." (*People* v. *Jenkins* (1995) 10 Cal.4th 234, 23, fn. 28 [40 Cal.Rptr.2d 903, 893 P.2d 1224]; *People* v. *Martin* (1995) 32 Cal.App.4th 656, 667 [38 Cal.Rptr.2d 776].)

Section 667, subdivision (c) of the three strikes law provides that: "Notwithstanding any other law, if a defendant has been convicted of a felony and it has been pled and proved that the defendant has one or more prior felony convictions as defined in subdivision (d), the court shall adhere to each of the following: . . . [¶] (2) Probation for the current offense shall not be granted, nor shall execution or imposition of the sentence be suspended for any prior offense. [¶] . . . [¶] (4) There shall not be a commitment to any other facility other than the state prison. . . ."

Subdivision (d)(1) of that section states in pertinent part: "The determination of whether a prior conviction is a prior felony conviction for purposes of subdivision (b) to (i), inclusive, shall be made upon the date of that prior conviction and is not affected by the sentence imposed unless the sentence automatically, upon the initial sentencing, converts the felony to a misdemeanor."

Subdivision (e) of the new law requires certain terms of imprisonment "shall apply" where a defendant has prior qualifying felony convictions.

Subdivision (f)(1) of that law provides in pertinent part that: "Notwithstanding any other law, subdivisions (b) to (i), inclusive, shall be applied in every case in which a defendant has a prior felony conviction as defined in subdivision (d)."

D. *Arguments and Analysis*:

Although not contesting the continued viability of section 17, subdivision (b) per se, the People's position appears to be that its applicability is limited by the three strikes legislation to those cases where no qualifying

strike priors[14] are pled and proven to be true in connection with the current crime. If there are such qualifying priors pled and proven, then it is argued, a wobbler automatically becomes a "straight felony" as defined under section 17, subdivision (a) and the trial court cannot exercise any discretion under subdivision (b) of that section to reduce such felony. The People theorize because Perez was found guilty by the jury, he was thus "convicted" of a "straight" felony under the three strikes law because the court found his priors true, which mandated the court to commit him to state prison and prohibited the court from treating his current offense as a misdemeanor at sentencing. (See § 667, subd. (c)(2) & (4).) They base this position on the general acceptance of a wobbler as a felony for all purposes until judgment or pronouncement of sentence (*People* v. *Banks, supra,* 53 Cal.2d at p. 381), on their presumed definition of the term "convicted" in subdivision (c) of section 667 in light of what they perceive to have been the Legislature's intent in using that undefined word in the new law, and on the plain language of subdivisions (e) and (f)(1), which they interpret as requiring a qualified repeat offender to be sentenced to state prison under the three strikes law whenever that offender is adjudicated to be guilty of any new felony, regardless of its wobbler nature.

After review of the relevant statutes, case law and similar issues concerning the undefined term "conviction" and the nature of wobbler offenses as raised by the first two bases of the People's theory propounded here, *People* v. *Vessell, supra,* 36 Cal.App.4th at pages 290-294 and *People* v. *Trausch, supra,* 36 Cal.App.4th at pages 1245-1247, each rejected the interpretation that the new three strikes legislation supersedes the trial court's discretion under section 17, subdivision (b)(1) once qualifying priors have been pled and proven.[15] Neither case, however, directly addressed the People's third argument that in essence the three strikes legislation created a new class of felonies, the nonreduceable wobbler, or straight felony, nor did they discuss

---

[14]For purposes of section 667, prior felony convictions are those defined as violent felonies under section 667.5, subdivision (c), and as serious felonies under section 1192.7, subdivision (c). (§ 667, subd. (d)(1).)

[15]Although the courts in *Vessell* and *Trausch* arrived at their conclusions through different analyses, each repudiated the People's various arguments also raised here which rely on the line of cases that finds a defendant "convicted" of a felony at the time his guilt is adjudicated (e.g., see *People* v. *Balderas* (1985) 41 Cal.3d 144, 203 [222 Cal.Rptr. 184, 711 P.2d 480]; *People* v. *Satchell* (1971) 6 Cal.3d 28 [98 Cal.Rptr. 33, 489 P.2d 1361, 50 A.L.R.3d 383]; *People* v. *Banks, supra,* 53 Cal.2d at p. 381; *People* v. *Booker* (1994) 21 Cal.App.4th 1517, 1521 [26 Cal.Rptr.2d 715]; *People* v. *Rhoads* (1990) 221 Cal.App.3d 56, 60 [270 Cal.Rptr. 266]; *People* v. *Johnson* (1989) 210 Cal.App.3d 316 [258 Cal.Rptr. 347]). (*People* v. *Trausch, supra,* 36 Cal.App.4th at pp. 1245-1247; *People* v. *Vessell, supra,* 36 Cal.App.4th at pp. 290-294.) We agree with *Trausch* and *Vessell* those cases are not relevant to the focal point for determining the nature of a current "felony" when such is a wobbler offense.

For similar reasons, we find the People's reliance on *People* v. *Wilson* (1991) 227 Cal.App.3d 1210 [278 Cal.Rptr. 319] and our recent case of *People* v. *Silva* (1995) 36

whether their holding would also apply to the trial court's authority under subdivision (b)(3) of section 17.

We agree with the reasoning in *Trausch* that section 17 is sui generis[16] and "specifically leaves the determination of the nature of the [current wobbler] conviction to the discretion of the judge to be determined *at sentencing.*" (*People v. Trausch, supra,* 36 Cal.App.4th at p. 1246, original italics.) As noted earlier in this opinion, the determination of the nature of a current wobbler[17] crime is the actual punishment imposed for that crime which is generally made by the trial court at the time of sentencing. We also agree such statutory authority and procedure applies only to wobblers and provides such offenses become misdemeanors "for all purposes" if the court so finds and declares them to be so at the sentencing. We do not agree, however, with the People's third assertion that the three strikes law nullifies such statutory authority and procedure for wobblers by automatically creating a new straight felony when qualifying priors are found true.

The underlying premise of the People's position is that the clear language of the three strikes law requires a qualified repeat offender, like Perez, to be sentenced to state prison under subdivisions (b) to (i) of section 667 whenever he is convicted of any new felony. Thus, regardless of the wobbler nature of Perez's felony, the People reason that once the court finds true a defendant has suffered a prior serious felony conviction, the three strikes law applies to provide the only penalty for his offense, replacing the specific code section defining that offense and its statutorily set punishment. The People explain this theory by citing several wobbler crimes which become straight felonies when a defendant has a prior felony conviction (e.g., §§ 314, subds. 1 & 2, indecent exposure, 646.9, subds. (a) & (c), stalking, 647.6, child molestation) and arguing by analogy that Perez's wobbler for receiving stolen property, also became a straight felony, which was nonreduceable, once the court found true he had suffered a prior felony conviction.

In support of this interpretation, the People cite language from *People v. Martin, supra,* 32 Cal.App.4th at page 667, which provides the punishment under the three strikes law is for the "crime" itself and is not an "added

---

Cal.App.4th 231 [43 Cal.Rptr.2d 8] misplaced. These cases dealt with situations factually and procedurally different than the one now before us.

[16]The court in *Vessell* also found section 17, subdivision (b) to be a more specific statute than the three strikes legislation. (*People v. Vessell, supra,* 36 Cal.App.4th at p. 294.)

[17]It bears repeating that a wobbler is a special class of crime which could be classified and punished as a felony or misdemeanor depending upon the severity of the facts surrounding its commission.

term."[18] They also claim the stated purpose in subdivision (b) to provide longer prison terms coupled with the use of the phrase "notwithstanding any other law" within section 667, subdivisions (c) and (f)(1) and the mandatory term "shall" in subdivision (c)(2) and (4) provides support for their interpretation a wobbler no longer exists when qualifying strike priors have been pled and proved.

The People place the cart before the horse, reasoning backwards to obtain the result they desire. Although their interpretation may be in harmony with the Legislature's stated intent in enacting the three strikes law, such construction ignores the plain language in subdivision (d)(1) of section 667 which evidences the Legislature's intent to specifically exempt from the definition of prior felony convictions those wobbler convictions where the sentence imposed "automatically, upon the initial sentencing, converts the felony to a misdemeanor[,]" and reads out of existence the conjunction "and" in subdivision (c) of section 667 in the phrase, "Notwithstanding any other law, if a defendant has been convicted of a felony *and* it has been pled and proved that the defendant has one or more prior felony convictions . . . the court shall adhere to each of the following . . . ." (Italics added.) As already stated by the court in *Trausch*, "[t]his language makes it clear that the Legislature intended that a person who has been convicted of a new '*felony*' *and* also has qualifying 'strikes' be sentenced to state prison pursuant to the provisions of the three strikes law. In other words, the 'current conviction' must be a *felony* to trigger application of the three strikes law." (*People* v. *Trausch, supra*, 36 Cal.App.4th at p. 1245, italics added.)[19]

To validate the People's position, we would have to rewrite section 667 by adding and subtracting words, which we cannot do. The matter of defining crimes and punishment is solely a legislative function. While the Legislature may have added a new sentencing punishment scheme for a certain class of recidivist offenders by its enactment of the three strikes law (*People* v. *Jenkins, supra*, 10 Cal.4th at p. 234, fn. 2), which admittedly supplants the punishment originally set for a certain crime if applicable, it does not define or create a new crime or class of felonies. The Legislature has clearly shown it knows how to create new classifications of crimes and sentence-enhancing statutes, as evidenced in the specific examples the People cite in the purported analogous situations, and in the enactment of section 17, subdivision

---

[18]The People cite specifically the following language from *People* v. *Martin, supra*, 32 Cal.App.4th at page 667: "Section 667, subdivision (e)(1) does not provide for any kind of 'added term.' Instead, it defines the term for the crime itself, supplanting the term that would apply but for the prior serious or violent felony."

[19]The court in *People* v. *Trausch, supra*, 36 Cal.App.4th at page 1245 also recognized the People placed emphasis on the wrong language of the three strikes law to support a similar position in that case.

(b) itself. (See also *People* v. *Bouzas* (1991) 53 Cal.3d 467, 479 [279 Cal.Rptr. 847, 807 P.2d 1076].) If the Legislature had wanted to create a new classification for felonies via the three strikes law, it certainly could have done so. It did not.

Contrary to the People's interpretion of the quoted language from *Martin* (*People* v. *Martin, supra*, 32 Cal.App.4th at p. 667) in support of their position, such merely addressed whether the new law was a sentencing scheme rather than an enhancement.[20] ■ As our Supreme Court noted in *Jenkins*, recidivist punishment schemes such as the new three strikes law provide more severe sentences for repeat offenders when a defendant with a recidivist criminal history "[*has*] *a present conviction* [*for*] *a qualifying felony*." (*People* v. *Jenkins, supra*, 10 Cal.4th at p. 254, italics added.) It is thus the status or nature of the current crime which must be determined to be a "conviction of a felony" before the more severe provisions of the three strikes law apply in a particular case due to qualifying prior strike convictions. (In accord, see *People* v. *Trausch, supra*, 36 Cal.App.4th at pp. 1245-1247.)

■ Moreover, we presume the Legislature was clearly aware of the court's powers under section 17, subdivision (b) when it enacted the three strikes law. (See *People* v. *Hernandez, supra*, 46 Cal.3d at p. 201.) Within such awareness was the knowledge section 17, subdivision (b) is only exercised by the trial court at the time of sentencing after an adjudication of guilt and before judgment. The specific exemption in section 667, subdivision (d)(1) of certain convictions that were made misdemeanors at the initial sentencing is an obvious reference to the trial court's long established powers under section 17, subdivision (b)(1) and (3). The Legislature did not specifically limit the court's power under these provisions in regard to determining the nature of the current conviction in the three strikes law. And, nothing in the language or history of the three strikes legislation suggests the drafters contemplated abrogration of this well-established authority. (See *People* v. *Siko* (1988) 45 Cal.3d 820, 824 [248 Cal.Rptr. 110, 755 P.2d 294].)

■ However, because the Legislature in the new law did negate the impact of a sentence previously imposed, specifically including within the definition of prior felony convictions those in which imposition of sentence or judgment had been suspended, execution of sentence had been stayed, or the defendant had been committed to specified institutions other than state prison (§ 667, subd. (d)(1)(A)-(D)), at a minimum, we conclude the intent of the Legislature concerning the continued viability of the trial court's use of

---

[20]Interestingly, the same court that determined *Martin* also decided *Trausch*.

at least section 17, subdivison (b)(3) is in question, is ambiguous and should be construed as favorably to the defendant as reasonably possible considering the language and the circumstances. (*People* v. *Weidert* (1985) 39 Cal.3d 836, 848 [218 Cal.Rptr. 57, 705 P.2d 380].)

 █ ██ ██ We, therefore, construe such limiting language in subdivision (d)(1) of section 667, to merely nullify the portion of a court's power under section 17, subdivision (b)(3) that previously could be exercised *after* the initial sentencing[21] to reduce a felony to a misdemeanor.[22] This interpretation is consistent with the Legislature's intent to impose longer prison terms for those more serious repeat offenders who commit a new crime which is serious enough to be classified a felony at the initial sentencing hearing. Further, our reading of this limitation comports with the conclusion reached in *Trausch* that the Legislature recognized the effect of sentencing under section 17 "in the context of the three strikes statute and did not override that effect in its scheme determining [in the first instance,] whether a prior conviction qualifies as a strike.[]" (*People* v. *Trausch, supra,* 36 Cal.App.4th at p. 1246, fn. omitted.) While the Legislature could have easily abolished or modified the trial court's authority to reduce a current offense from a felony to a misdemeanor for a wobbler in the three strikes law, it did not do so other than to indirectly limit its effect in subdivision (d)(1). Such limitation to subdivision (b)(3) of section 17 does not, however, void the trial court's sentencing in this case. Because the trial court exercised its discretion under section 17, subdivision (b)(3) at the initial sentencing of the current offense, we hold its authority was authorized and not superseded by the three strikes law.

Accordingly, we conclude, consistent with the outcome of both *Vessell* and *Trausch,* the Legislature in enacting the three strikes law did not intend to abrogate the trial judge's long-standing powers under section 17, subdivision (b)(1) and did not intend to supersede the court's authority under

---

[21]The People's position the "initial sentencing" does not encompass the court's right to impose probation and thereafter declare a wobbler a misdemeanor during the same hearing is hypertechnical and unfounded. A sentencing hearing generally includes not only matters concerning a probation grant or denial, but also all matters concerning punishment, i.e., conditions, fines, actual punishment imposed and suspended, etc., before judgment is imposed during that same hearing.

Moreover, we agree with the court in *Trausch* when it stated: "[U]ntil the trial court pronounces sentence on the new offense, it cannot be determined if a predicate current 'felony.' exists for application of the three strikes law[]." (*People* v. *Trausch, supra,* 36 Cal.App.4th at p. 1247.)

[22]Recent language in *People* v. *Sipe* (1995) 36 Cal.App.4th 468 [42 Cal.Rptr.2d 266] supports our interpretation that the exception in subdivision (d)(1) of the three strikes law applies only to the events at the time of the original sentencing, "so subsequent events, such as a reduction to a misdemeanor (§ 17, subd. (b)(3)), will not affect its classification as a felony conviction." (*People* v. *Sipe, supra,* 36 Cal.App.4th at p. 478.)

subdivision (b)(3) of that section to determine whether a wobbler should be reduced to a misdemeanor when such authority is exercised at the initial sentencing.

DISPOSITION

Kremer, P. J., and Benke, J., concurred.

Petitioner's application for review by the Supreme Court was denied December 21, 1995.